UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARUN PATEL, ANJANA PATEL, SHRUTI PATEL, SWATI PATEL, and AMIT PATEL, <br><br> Plaintiffs, <br><br> vs. <br><br> AMRISH K. MAHAJAN, ARUN VELUCHAMY, JAMES A. REGAS, ANU VELUCHAMY, and SONIA VELUCHAMY, <br><br> Defendants. | 11 C 4545 <br><br> Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

Arun Patel, Anjana Patel, Shruti Patel, Swati Patel, and Amit Patel brought this suit against Amrish K. Mahajan, Arun Veluchamy, James A. Regas, Parameswary Pethinaidu, Pethinaidu Thathnaidu Veluchamy, Anu Veluchamy, and Sonia Veluchamy, alleging state law fraud and violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq*. Doc. 1. Regas moved to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that the complaint failed to properly plead a RICO claim. Docs. 11, 13. Rather than respond to Regas' motion, the Patels filed an amended complaint that altered the RICO claims and dropped Parameswary Pethinaidu and Pethinaidu Thathnaidu Veluchamy as defendants. Doc. 15. The remaining Veluchamy defendants (Arun, Anu, and Sonia) and Regas separately moved to dismiss the amended complaint under Rule 12(b)(6), arguing that the amended complaint, like the original complaint, failed to properly plead a RICO claim. Docs. 27, 30. The Patels again did not respond to the motions, and instead sought leave to file a second amended complaint that again refined the

-1-

RICO claims. Doc. 34. The court allowed the Patels to file a second amended complaint, but made clear that this was the Patels' last try and that a third amended complaint would not be accepted. Doc. 36.

Now before the court are the Veluchamy defendants' and Regas' separate motions to dismiss the second amended complaint (Doc. 37) under Rule 12(b)(6). Docs. 38, 40. (Although Mahajan has not appeared, he will be given the benefit of the arguments set forth by his co-defendants.) The motions are granted as to the RICO claims, which are dismissed with prejudice. With no federal claim left in the case, the state law claims are dismissed without prejudice under 28 U.S.C. § 1367(c).

## Background

The second amended complaint's well-pleaded factual allegations, though not its legal conclusions, are assumed true at this juncture. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763 (7th Cir. 2010). In evaluating a motion to dismiss, the court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The court also must consider additional facts set forth in the Patels' opposition brief or supported by attachments to the brief, so long as those facts "are consistent with the pleadings." *Ibid.*; *see also Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012) (per curiam); *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 542 n.1 (7th Cir. 2008). The following sets forth the facts as favorably to the Patels as permitted by the second amended complaint and other materials that may be considered on a Rule 12(b)(6) motion.

Defendants at all relevant times were officers and/or shareholders of First Mutual Bancorp of Illinois, Inc. In August 2008, at the behest of the Veluchamys and the other First Mutual directors, Mahajan called Arun Patel for an appointment to discuss a possible high yield investment. Doc. 37 at ¶ 25. Mahajan called Arun again on September 10, 2008, seeking to discuss whether Arun and the other Patels would loan money to First Mutual; Mahajan said that the loan would be repaid with interest, though Mahajan knew it would not be repaid. *Id*. at ¶ 32. The Patels, induced in part by a $160,000 cashier's check as "advance interest," ultimately sent $2 million to First Mutual in nine installments, with the last installment occurring on September 18, 2008. *Id*. at ¶¶ 33, 35-43. First Mutual did not repay the loan. *Id*. at ¶¶ 13, 32. According to the Patels, Defendants sent some of their money to India by wire transfer and used the rest to purchase jewelry that was sent to other States and overseas. *Id*. at ¶¶ 46, 49-51. The Federal Deposit Insurance Corporation ("FDIC") placed First Mutual into receivership in July 2009, and the bank was involuntarily dissolved in June 2010. Doc. 45-1 at ¶¶ 56, 88; Corporation File Detail Report, Ill. Sec. of State, http://www.ilsos.gov/corporatellc (last visited Aug. 3, 2012).

On October 25, 2011, the FDIC, in its capacity as First Mutual's receiver, filed suit against Mahajan, the Veluchamys, Regas, and others. *FDIC v. Mahajan*, 11 C 7590 (N.D. Ill.). According to the FDIC's complaint, which the Patels have adopted for purposes of opposing dismissal of this case, Regas, Mahajan, Arun Veluchamy, and Anu Veluchamy "repeatedly drained the Bank's capital by using Bank funds for personal expenses," "approved substantial payments to relatives and friends for renovations to the Bank's offices," "approved $10.5 million in dividend payments to the Bank holding company, First Mutual Bancorp of Illinois, Inc., which, in turn, paid out the dividends to shareholders," and approved "$10.5 million in dividends to the Veluchamy family and Mahajan at a time when Mutual Bank was in poor financial

-3-

condition and in need of conserving its capital base." Doc. 45-1 at ¶¶ 5, 8, 12, 13. The FDIC's claims, some of which have been dismissed, are set forth in detail in *FDIC v. Mahajan*, 2012 WL 3061852 (N.D. Ill. July 26, 2012).

## Discussion

The Patels' second amended complaint purports to state four claims. Count I is a claim for racketeering activity under 18 U.S.C. § 1962(c), Doc. 37 at ¶¶ 5-68; Count II is a claim for conspiracy under § 1962(d), *id*. at ¶¶ 69-74; Count III is a claim for the use of funds derived from racketeering activity under § 1962(a), *id*. at ¶¶ 75-82; and Count IV is a state law fraud claim, *id*. at ¶¶ 83-91. The claims are discussed in turn.

Section 1962(c) makes it unlawful for an employee of an enterprise engaged in interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a § 1962(c) claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern of racketeering activity." *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011); *see also United States v. Shamah*, 624 F.3d 449, 454 (7th Cir. 2010).

To properly plead the third element, a pattern of racketeering activity, a complaint must allege the commission of at least two predicate acts of racketeering over a ten-year period. *See DeGuelle*, 664 F.3d at 199 (citing 18 U.S.C. § 1961(5)). "'Racketeering activity' is limited to the specific acts statutorily enumerated in 18 U.S.C. § 1961(1)." *Ibid*. In addition, the alleged acts of racketeering activity must satisfy the "continuity plus relationship" test, which requires "a relationship between the predicate acts as well as a threat of continuing activity." *Ibid*. (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "A relationship is established if the criminal acts have the same or similar purposes, results, participants, victims, or methods of

commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Ibid*. The Seventh Circuit has described the "continuity" component of the "continuity plus relationship" test as follows:

> Continuity can be a closed- or open-ended concept. Closed-ended continuity refers to criminal behavior that has ended but the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future. In contrast, open-ended continuity requires a showing of past conduct that by its nature projects into the future with a threat of repetition.

*Ibid*. (citations and internal quotation marks omitted). As the Seventh Circuit has noted, "no single formula is required for a RICO pattern," which means that the test is "necessarily less than precise," requiring the court to exercise its judgment and common sense. *J.D. Marshall Int'l, Inc. v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991); *see also Hartz v. Friedman*, 919 F.2d 469, 472 (7th Cir. 1990) ("The pattern requirement is difficult to define and requires courts to use common sense.").

Regas contends, among other things, that the Patels have not adequately pleaded the continuity component of the pattern element of their § 1962(c) claim. Doc. 41 at 11-12. The Patels' five-page opposition brief obliquely references continuity, noting that the second amended complaint alleges that "[t]he racketeering conspiracy is ongoing because defendants continue to segregate and secrete the stolen funds, continue to reinvest kickbacks and bribes in the racketeering scheme, continue to facilitate the transfer of investors' money from the United States, continue to arrange the laundering of millions of dollars of assets, and other acts." Doc. 45 at 4 (quoting Doc. 37 at ¶ 13). The court (generously) will view this passage of the Patels' brief as arguing that the second amended complaint adequately pleads open-ended continuity. Another allegation in the second amended complaint, which the Patels' brief does not cite,

confirms that they are premising the pattern requirement of their § 1962(c) claim on open-ended continuity:

> The racketeering enterprise is ongoing and presents the threat of continued criminal activity. The defendants continue to commit wire fraud and mail fraud, continue to secrete and convert plaintiffs' funds, continue to cover up their scheme of fraud, continue to transfer stolen assets interstate and overseas, continue to pay bribes and kickbacks, continue to travel overseas and interstate in aid of the racketeering enterprise, and continue to reinvest the stolen funds.

Doc. 37 at ¶ 56.

These allegations fail to adequately plead open-ended continuity. As noted above, "open-ended continuity requires a showing of past conduct that by its nature projects into the future with a threat of repetition." *DeGuelle*, 664 F.3d at 199 (internal quotation marks omitted). The Patels allege that the predicate acts continue, Doc. 37 at ¶ 56, but provide no details to support the allegation, which is reason enough to hold that open-ended continuity has not been properly alleged. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 783 (7th Cir. 1994) ("A threat of continuity cannot be found from bald assertions such as 'James Elliot continues his racketeering activities.'"). In any event, it is difficult to see how a "threat of repetition" existed, given that the FDIC placed First Mutual into receivership less than a year after Defendants allegedly defrauded the Patels and that First Mutual was involuntarily dissolved shortly thereafter. *See Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 778 (N.D. Ill. 2005) (holding that the continuity requirement is not satisfied where the alleged enterprise, a corporation, had been dissolved). And while the Veluchamys may, as the Patels allege, continue to conceal and benefit from their ill-gotten gains, that does not establish the threat of repetition necessary for open-ended continuity. *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 474 (7th Cir. 2007) ("actions, even if themselves illegal, taken in an effort to cover up a criminal

scheme do nothing to extend the duration of the underlying … scheme," and therefore do not establish a threat of continuity) (internal quotation marks omitted); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 511 (S.D.N.Y. 2007) ("Plaintiff's interpretation … would permit any plaintiff once defrauded to state a RICO claim if the defendants continued to derive a benefit from the property they obtained."); *Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc.*, 863 F. Supp. 447, 460 (E.D. Mich. 1994) ("When the Supreme Court spoke of the threat of repetition, it was referring to the threat of repeated *victimization* … , not merely the retention of the ill-gotten fruits of previous crimes."); *Bingham v. Zolt*, 683 F. Supp. 965, 970 (S.D.N.Y. 1988) ("To say that [the defendants'] continuing control of the music companies constituted ongoing criminal activity would allow plaintiffs to turn every finite scheme—or at least those involving economic crimes—into an enterprise simply by characterizing the defendant's subsequent enjoyment of the proceeds of the scheme as continuous criminal activity."). The Patels' brief does not contend that the second amended complaint pleads closed-ended continuity, so any such argument is forfeited. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995).

Section 1962(d) makes it "unlawful … to conspire to violate" §§ 1962(a), (b), or (c). 18 U.S.C. § 1962(d). When a § 1962(c) claim fails, a § 1962(d) claim premised on the same facts fails as well. *See Jennings*, 495 F.3d at 469 (affirming dismissal of a § 1962(d) claim where the § 1962(c) claim failed); *Stachon v. United Consumers Club*, 229 F.3d 673, 677 (7th Cir. 2000) ("Since Appellants fail to establish a violation of section 1962(c), their section 1962(d) claim based on the same facts must fail as well."); *Cook-Ill. Corp. v. Teamsters Local No. 777*, 2012 WL 1655976, at *6 (N.D. Ill. May 10, 2012) ("Where a plaintiff fails to allege a claim for

violation of § 1962(c), the plaintiff's § 1962(d) conspiracy claim fails if it is based on the same nucleus of operative facts as its § 1962(c) claim."); *Meier v. Musburger*, 588 F. Supp. 2d 883, 911-12 (N.D. Ill. 2008) (listing cases). Because the Patels' § 1962(d) conspiracy claim rests on the same factual predicate as their § 1962(c) claim, the § 1962(d) claim is not viable.

Section 1962(a) makes it unlawful for "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity … to use or invest, directly or indirectly, any part of such income, or the proceeds of such income" in an enterprise engaged in interstate or foreign commerce. 18 U.S.C. § 1962(a). To state a § 1962(a) claim, a plaintiff must allege "the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of an enterprise" in a manner that caused the alleged injury. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 785 (7th Cir. 1999); *see also Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 398 (7th Cir. 2009). A § 1962(a) claim is not viable where the plaintiff fails to adequately allege a pattern of racketeering activity. *See Lachmund*, 191 F.3d at 785 (affirming 12(b)(6) dismissal of a § 1962(a) claim when "[a]s [the court] indicated in [its] discussion of [the plaintiff's] § 1962(c) claim, [the plaintiff] has not adequately pleaded a pattern of racketeering activity"); *McDonald v. Schenker*, 18 F.3d 491, 494 n.2 (7th Cir. 1994) ("given our eventual determination that [the plaintiff] has failed to allege a pattern of racketeering, then, by definition, [the plaintiff] cannot sufficiently allege under § 1962(a) that she was injured by [the defendant's] investing money 'derived, directly or indirectly, *from a pattern of racketeering activity*'"). Because the Patels failed to allege a pattern of racketeering activity, their § 1962(a) claim fails.

The Patels argue that they are entitled to discovery before their RICO claims are dismissed. Doc. 45 at 3-4. The argument is meritless, as a plaintiff unable to plead a viable

RICO claim, particularly after three attempts, is not entitled to discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 802-03 (7th Cir. 2008) (in affirming the dismissal of the plaintiff's RICO claims, holding that "a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case"); *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001) (same).

That leaves the state law fraud claim. Because some (if not all) of the Plaintiffs and some (if not all) of the Defendants are Illinois citizens, the only basis for jurisdiction over the state law claims is the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). Section 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The RICO claims are the only claims over which the court had original jurisdiction, and those claims have been dismissed. "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). This rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*.

None of these exceptions apply here. Illinois law gives the Patels one year to refile their state law claim in state court. *See* 735 ILCS 5/13–217; *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). Substantial federal judicial resources have not yet been committed to the state law claim. And because the RICO claims were dismissed for failure to properly allege a pattern of racketeering activity, is not clearly apparent how the state law fraud claim should be decided.

It follows that relinquishing jurisdiction over the state law claim is appropriate under

§ 1367(c)(3). *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994).

## Conclusion

Defendants' motions to dismiss are granted as to the RICO claims. Because the Patels have had three chances to plead those claims, and because they were warned that this was their last chance, the dismissal is with prejudice. The state law claim is dismissed without prejudice under 28 U.S.C. § 1367(c); the Patels may pursue that claim in state court.

August 6, 2012

United States District Judge
Gary Feinerman